UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ORLANDO SANTIAGO PEREZ, :
          Plaintiff, :
 :
      v. : No. 5:20-cv-05591
 :
PENSKE LOGISTICS, LLC; :
PENSKE LOGISTICS CANADA LTD; :
and WHEEL KING TRANSHAUL, INC., :
          Defendants. :
_____

**O P I N I O N**
**Motion to Remand, ECF No. 7 – Denied**
**Motion to Dismiss, ECF No. 16 – Denied**

**Joseph F. Leeson, Jr.**                                                                  **August 17, 2021**
**United States District Judge**

**I.**      **INTRODUCTION**

      This case involves claims arising out of a motor vehicle accident between Plaintiff Santiago Perez and Jeet Charan Singh, who was driving a vehicle owned by Defendant Penske Logistics Canada Ltd ("Penske Canada"). Perez alleges that Penske Canada, among other Defendants, is vicariously liable for the actions of Singh, its employee, and was negligent/reckless in hiring, retention, and supervising of its employees. Penske Canada removed the action to this Court based on diversity jurisdiction alleging that Perez fraudulently joined Penske Logistics, LLC ("Penske Pennsylvania"), a Pennsylvania corporation, to defeat diversity. In turn, Perez has moved to remand. Penske Canada has further moved to dismiss the action under both Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). For the reasons outlined below, Perez's motion to remand is denied, Penske Canada's motion to dismiss is denied.

1
081621

## II.     BACKGROUND

The factual allegations, as taken from the Complaint, are as follows:

On May 2, 2019, Singh was operating a tractor trailer owned, leased, and operated by Defendants.[1] *See* Compl. ¶ 49, ECF No. 1–2. At all relevant times, Singh was employed by and contracted to perform delivery services for the Defendants and was subject to the Defendants' supervision and control. *See id*. ¶ 22. Both Perez and Singh were operating vehicles on Interstate 77 near Wilkes-Barre, Pennsylvania. *See id.* ¶ 49.

Around 10:42 p.m., Perez was rear-ended by Singh. *See id*. ¶¶ 50–52. Singh was driving too fast for the conditions of the road and this, coupled with Singh's inattention, caused the crash. *See id.* ¶¶ 53–54. Singh exhibited a "conscious disregard" for the health and safety of the public by operating his vehicle at dangerously high speeds. *See id.* ¶ 56. Singh was distracted by his cell phone in the moments preceding and during the crash. *See id*. ¶ 57.

At the time of the crash, Singh violated the Federal Motor Carrier Safety Administration's ("FMCSR") hours of service limits but chose to operate his vehicle in a fatigued condition. *See id*. ¶ 61. Defendants participated in, knew of, or should have known that Singh was operating over hours and driving while fatigued and otherwise operating the vehicle in an unsafe, dangerous, and reckless condition. *See id*. ¶ 62. Additionally, Singh had an unsafe history of motor vehicle and criminal violations and that the Defendants knew, or should have known, that Singh failed to list his prior violations on his employment application. *See id*. ¶ 65.

---

[1]     In his Complaint, Perez refers to, and makes allegations against, Penske Canada, Penske Pennsylvania, and Wheel King together as "Defendants." To accurately represent Perez's pleadings this Court refers to the group as "Defendants" when discussing Perez's allegations against them.

Defendants also knew Singh had a propensity for drug, alcohol, vehicle, and criminal violations yet continued to employ him as a driver. *See id*. ¶¶ 65-73.

In December 2019, Perez filed a praecipe to issue writ of summons against Penske Pennsylvania in the Philadelphia County Court of Common Pleas as to Penske Pennsylvania. *See* Phil. Docket, ECF 1-4.  The parties engaged in approximately ten months of pre-complaint discovery.  Then, on October 9, 2020, Perez filed a Complaint in the Philadelphia County Court of Common Pleas against Defendants Penske Canada, Penske Pennsylvania, and Wheel King Transhaul, Inc. ("Wheel King").  *See id.*; Compl.  The Complaint alleges that the Defendants were negligent/reckless in hiring, retaining, and supervising Singh and vicariously liable for accident caused by Singh. *See id.* Perez served the Complaint on Penske Pennsylvania the same day it was filed.  *See* Not. Removal ¶ 23, ECF 1. Perez served Wheel King on October 30, 2020. *See* Proof of Service 4-7, ECF No. 11. On November 9, 2020, Perez served the Summons and Complaint on Penske Canada.[2] *See id.* at 3.

Also on November 9, 2020, Penske Pennsylvania removed the suit to federal court based on diversity jurisdiction[3] under a theory of fraudulent joinder. *See* Notice of Removal, ECF 1. Penske Pennsylvania alleges that Perez fraudulently joined it to defeat diversity. *See id.* In support of its removal, Penske Pennsylvania attached a declaration of noninvolvement asserting the following:

> Penske Logistics, LLC did not own, operate, maintain, control, lease, or assign the tractor-trailer driven by Singh at the time of the accident, nor did it pay for the shipping or transportation of the load being transported by Singh at the time of the accident . . . never hired, supervised or retained Singh . . . has no contract or other

---

[2]   The propriety of this service is discussed in further detail below.
[3]   Perez is a citizen of Florida.  *See* Compl. ¶ 1.  Penske Pennsylvania is a citizen of Delaware, Pennsylvania, Michigan, and Japan.  *See id.* ¶ 2; Not. Removal ¶¶ 15, 17-19.  Penske Canada is a citizen of Canada.  *See* Not. Removal ¶ 12.  Wheel King is a citizen of Canada.  *See id.* ¶ 11.

3
081621

employment relationship with Singh . . . never consented to Singh's operation of the tractor-trailer, nor did it receive a financial benefit from Singh's operation of the tractor-trailer… did not select any equipment or entities used to transport the load being transported by Singh . . . never selected Wheel King as the carrier for the load transported by Singh at the time of the accident . . . exercised no control over dispatching of the tractor-trailer driven by Singh at the time of the accident . . . had no contractual right to and exercised no control over the transportation or routing of the load in question . . . never accepted responsibility for transporting the shipment being transported by Singh at the time of the accident . . . was not the motor carrier for the shipment being transported by Singh at the time of the accident.

*See* Declaration of Noninvolvement ¶¶ 10–19, ECF 1–3.

On June 9, 2021, Penske Canada moved to dismiss for lack of jurisdiction and failure to state a claim. *See* Mot. to Dismiss, ECF 16. Penske Canada alleges that service was improper and thus the case should be dismissed for lack of jurisdiction. *Id.* Additionally, Penske Canada asserts that Perez's claims are preempted by the Federal Aviation Administration Authorization Act ("FAAAA") and should be dismissed. *Id.*

### III.   LEGAL STANDARDS

#### A.   Motion to Remand – Review of Applicable Law

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." *See also* 28 U.S.C. § 1446. "The federal removal statute, 28 U.S.C. § 1441, is strictly construed, requiring remand if any doubt exists over whether removal was proper." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015). "The party seeking removal carries the burden of proving that removal is proper." *Id.* at 218.

After an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court pursuant to 28 U.S.C. § 1447. "A motion to remand the case on the basis

of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c).

**B.     Fraudulent Joinder – Review of Applicable Law**

The doctrine of fraudulent joinder is an exception to the requirement that when removal depends on diversity of citizenship, there must be complete diversity between the parties. *See In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006). Under this doctrine, "[i]n a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Id.* at 216.

A removing defendant alleging fraudulent joinder bears a "heavy burden of persuasion." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). To establish a defendant was fraudulently joined, the removing party must show "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Id.* (citation omitted). A claim is colorable so long as it is not "wholly insubstantial and frivolous." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992). This Court has explained that "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Boyer*, 913 F.2d at 111 (citation omitted); *see also Sherfey v. Johnson & Johnson*, No. 12-4162, 2014 U.S. Dist. LEXIS 10690, 2014 WL 715518, at *6 (E.D. Pa. Jan. 29, 2014) (noting a finding of fraudulent joinder "is usually reserved for situations where recovery from the nondiverse defendant is a clear legal impossibility" (citation omitted)).

A court may "look to more than just the pleading allegations to identify indicia of fraudulent joinder." *In re Briscoe,* 448 F.3d at 219; *see also Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). The Third Circuit has explained that, when conducting a jurisdictional analysis, there is "no reason to preclude a district court from a limited consideration of reliable evidence that the defendant may proffer to support the removal." *In re Briscoe*, 448 F.3d at 220. "Such evidence may be found in the recording from prior proceedings . . . or in other relevant matters that are properly subject to judicial notice." *Id.* Courts in this district have looked to affidavits discussing a party's involvement in the case to determine whether it was fraudulently joined. *See Weaver v. Conrail, Inc.*, Civ. Act. No. 09–5592, 2010 WL 2773382, at *7, *9 (E.D. Pa. July 13, 2010) (holding that, under *In re Briscoe*, the court could properly consider an affidavit stating that certain defendants had absolutely no control or right to say how particular trains were run at the time of plaintiff's accident); *In re Diet Drugs (Phentermine/ Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig.*, MDL No. 1203, 2009 WL 3595633, at *2 (E.D. Pa. Oct. 27, 2009) (finding sales representatives were fraudulently joined based in part on an affidavit disclaiming any knowledge of the alleged dangers associated with the product).

In conducting its analysis, this Court must accept as true all factual allegations of the complaint and must "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Batoff*, 977 F.2d at 851-52. If the court "determines that it does not have subject-matter jurisdiction over the removed action because the joinder was not fraudulent, it must remand to state court." *In re Briscoe*, 448 F.3d at 215–16 (citing 28 U.S.C. § 1447(c)). Conversely, if the court determines that the joinder was fraudulent, "the court can disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over

a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* at 216 (internal citations omitted).

   **C.**   **Motion to Dismiss Rule 12(b)(5) – Review of Applicable Law**

  Under Rule 12(b)(5), a defendant may move to dismiss when a plaintiff fails to properly serve him or her with the summons and complaint. *See* Fed. R. Civ. P. 12(b)(5). In a Rule 12(b)(5) motion, "the party making the service has the burden of demonstrating validity when an objection to the service is made." *Suegart v. U.S. Customs Serv.*, 180 F.R.D. 276, 278 (E.D. Pa. 1998). Rule 4 of the Federal Rules of Civil Procedure outlines, *inter alia*, the contents of the summons, the time for service, and the proper methods of service. "Good faith reliance on the apparent authority of an individual to accept service on behalf of a business can satisfy the [service] requirement." *Meoli v. Message Ctr. USA*, No. 96-CV-7469, 1998 WL 717418, at *1 (E.D. Pa. Sept. 25, 1998) (citing *Ayres v. Jacobs & Crumplar, P.A.*, Civ. A. No. 94–658–SLR, 1995 WL 704781, at *3 (D. Del. Nov. 20, 1995), *aff'd*, 99 F.3d 565 (3d Cir. 1996)). For these reasons, when addressing a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service, this Court has "broad discretion." *See Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992).

   **D.**   **Motion to Dismiss Rule 12(b)(6) – Review of Applicable Law**

  Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of proving that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### E. FAAAA Preemption – Review of Applicable Law

In *Bedoya v. American Eagle Express Inc.*, the Third Circuit articulated a four-part inquiry to determine whether preemption by the FAAAA is appropriate. 914 F.3d 812 (3d Cir. 2019):

(1). First, courts should examine "whether the state law at issue applies to all businesses or whether it focuses on motor carriers." *Id.* at 818. Laws directed at "members of the general public" that are not targeted at motor carriers are viewed as not having a direct effect on motor carriers. *See Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 375 (2008). If the state law at issue applies to all businesses, then it is not preempted. *See Ciotola v. Star Transp. & Trucking LLC*, 481 F. Supp. 3d 375 (M.D. Pa. 2020).

(2). Second, courts should consider "whether the law addresses the carrier-employee relationship as opposed to the carrier-customer relationship." *Bedoya*, 914 F.3d at 821. Courts

must assess whether the challenged law's impact on prices, routes, or services, although indirect, is nevertheless "significant" rather than "tenuous, remote, or peripheral." *Id.*

(3). Third, courts should consider whether the law binds the carrier to provide a particular price, route, or service.

(4). Fourth, courts should consider Congress' goal of avoiding a "patchwork" of differing state "service-determining laws," which could undermine its "major legislative effort to leave [decisions regarding the provision of services] to the competitive marketplace." *Id.* at 823 (citing *Rowe*, 552 U.S. at 373).

## IV.  ANALYSIS

### A.  Perez's Motion to Remand is denied.

Penske Pennsylvania timely removed the Complaint to this Court on the basis of diversity jurisdiction. The diversity jurisdiction statute provides: "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(2). Although the amount in controversy here exceeds the jurisdictional sum and the parties are diverse, the removal statute qualifies that a "civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [28 USCS § 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). To avoid this limitation, Penske Pennsylvania alleges that it was not properly joined to this action.

To determine whether Penske Pennsylvania was fraudulently joined, this Court must determine whether Perez has a reasonable basis in fact or colorable ground supporting the

vicarious liability and negligent/reckless hiring, retention and supervising claims brought against Penske Pennsylvania. *See Boyer*, 913 F.2d at 111. To establish vicarious liability, "a plaintiff must show that the employee's conduct: (1) is of a kind and nature that he is employed to perform; (2) occurs substantially within the authorized time and space limits designated by his employer; and (3) is driven by a desire to serve the employer." *Schloss v. Sears Roebuck & Co.*, No. CIV.A. 04-CV-2423, 2005 WL 433316, at *2 (E.D. Pa. Feb. 24, 2005) (citing *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998)). To establish a claim for negligent/reckless in hiring, retention, and supervising a plaintiff must show that an employer was "negligent or reckless 'in the employment of improper persons or instrumentalities in work involving risk of harm to others; . . . in the supervision of the activity; or ... in permitting, or failure to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.'" *Doe v. Liberatore*, 478 F. Supp. 2d 742, 760 (M.D. Pa. 2007) (citing *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 697 (Pa. Super. Ct. 2000)). *See also Doe v. Schneider,* 667 F. Supp. 2d 524, 531 (E.D. Pa. 2009). If this can be shown, then "an employer is subject to liability for harm resulting from" his employee's conduct." *Doe*, 478 F. Supp. 2d at 760 (citing *R.A. ex rel. N.A.*, 748 A.2d at 697).

In his Complaint, Perez refers to Penske Pennsylvania and Penske Canada collectively. *See* Compl. ¶ 10. The Complaint does not include a single factual allegation directly against Penske Pennsylvania. *See generally id.* The Complaint also makes numerous allegations against all three Defendants in the collective. *See, e.g.* ¶ 15. In sharp contrast, Kresten Hansen's declaration of noninvolvement, which was offered by Penske Pennsylvania, outlines, in great detail, Penske Pennsylvania's lack of involvement in this case. *See* Declaration of Noninvolvement ¶¶ 10–19, ECF No. 1-3. This declaration states that Penske Pennsylvania "did

not own, operate, maintain, control, lease, or assign the tractor-trailer driven by Singh at the time of the accident, nor did it pay for the shipping or transportation of the load being transported by Singh at the time of the accident." *See id.* ¶ 10. The declaration states that Singh was never an employee of, or supervised by, Penske Pennsylvania, nor was there any contract or other relationship between the two. *Id.* ¶ 12. Hansen declares that Penske Pennsylvania never consented to Singh's operation of the tractor-trailer, did not receive a financial benefit therefrom, did not select any equipment or entities used to transport the load being transported by Singh, and exercised no control over dispatching of the tractor-trailer driven by Singh at the time of the accident or over the transportation or routing of the load in question. *See id.* ¶¶ 13-19. The declaration further provides that Penske Pennsylvania never hired or had any contractual relationship with Wheel King. *See id.* The declaration states that Penske Canada owned the trailer and arranged for transportation of the load. *See id.* ¶¶ 4-12.

Perez asks the Court not to rely on this allegedly self-serving[4] declaration in making its fraudulent joinder analysis. Significantly, however, Perez attached an earlier affidavit from Hansen, dated March 11, 2020, to his Complaint. *See* Hansen Aff., Compl. at Ex. B, ECF No. 1-2. This affidavit also attested that Penske Pennsylvania did not tender the load being shipped at the time of the crash to Wheel King, nor was it aware of, or did it enter into, any transportation agreements or contracts for the same. *See* Hansen Aff. ¶¶ 10-11, 21. Perez therefore relied on Hansen's affidavit when it suited him but asks the Court not to do so now. Notably, it was after

---

[4] Because Penske Canada is a wholly owned subsidiary of Penske Pennsylvania, Hansen's declaration is not necessarily self-serving to the extent it tends to implicate Penske Canada. *But see Nobers v. Crucible, Inc.*, 602 F. Supp. 703, 707 (W.D. Pa. 1985) ("Given the lack of allegations to support piercing the corporate veil, and the precept that a parent corporation is not liable for the contracts of a subsidiary, we hold that plaintiffs have no colorable claim against Colt for breach of the alleged employment contacts.").

receiving the March affidavit and conducting approximately ten months of discovery that Perez sought to name Penske Canada and Wheel King as Defendants. Accordingly, its pre-complaint discovery, which included the accident report listing the owner's name of the vehicle driven by Singh as Penske Canada, not Penske Pennsylvania, *see* Police Report, ECF No. 1-4, apparently convinced Perez that Penske Canada is a proper defendant.

Even now, in opposition to the Motion to Remand, Perez offers no additional factual allegations to support its claims against Penske Pennsylvania. Instead, Perez provides "snapshots" of Penske Pennsylvania's website, which do little more than list its address and nature of business. Perez also suggests that he has stated a claim because he "devoted thirteen (13) paragraphs in his Complaint laying out the controlling case law pertaining to Penske qualifying as a motor carrier." *See* Brief Supp. Mot. Remand 5, ECF No. 7-1 (citing Compl. ¶¶ 81-93). However, these thirteen paragraphs contain no specific factual allegations against Penske Pennsylvania and, in fact, support a finding of fraudulent joinder. Specifically, the Complaint, citing Eleventh Circuit case law, alleges that "in determining whether a party is a carrier or a broker, the crucial question is whether the party has legally bound itself to transport goods by accepting responsibility for ensuring the delivery of the goods." Compl. ¶ 86. The Complaint asserts that "because Penske[5] accepted responsibility for transporting this shipment, it was a carrier at all relevant times hereto." *See id.* ¶ 90. However, both Hansen affidavits, one of which was known to Perez at the time of filing and attached to the Complaint, states that Penske Pennsylvania took no responsibility for the load being transported at the time of the crash. *See* Declaration of Noninvolvement ¶¶ 10, 13-20; Hansen Aff. ¶¶ 11, 19-20.

---

5      Perez's reference to "Penske" includes both Penske Pennsylvania and Penske Canada, collectively. *See* Compl. ¶ 10.

While the Court must accept the factual allegations of the Complaint as true, the allegations against Penske are made solely in the collective and do not carry any reasonable inference of Penske Pennsylvania's involvement, especially in light of Hansen's affidavit. *See Avicolli v. Bj's Wholesale Club*, No. 21-1119, 2021 U.S. Dist. LEXIS 53104, at *11 (E.D. Pa. Mar. 22, 2021) (holding that although the court must accept "well-plead allegations as true, we are not required to blindly accept conclusory allegations which attempt to attach responsibility to a [defendant]" (distinguishing *Gaynor v. Marriott Hotel Servs.*, No. 13-3607, 2013 U.S. Dist. LEXIS 113829 (E.D. Pa. Aug. 13, 2013))). Based on Hansen's declaration of noninvolvement, recovery from Penske Pennsylvania is a "clear legal impossibility." *See Sherfey*, 2014 WL 715518, at *6; *Boyer*, 913 F.2d at 111. Because there is no reasonable basis in fact or colorable ground supporting the claim against Penske Pennsylvania, the Court finds that Penske Pennsylvania was fraudulently joined and is dismissed. Consequently, the Court has jurisdiction and Perez's motion to remand is denied.[6]

### B.    Penske Canada's 12(b)(5) Motion to Dismiss is denied.

Penske Canada alleges it was improperly served by Perez. For that reason, Penske Canada has moved to dismiss for lack of jurisdiction pursuant to Rule 12(b)(5).

Rule 4 of the Federal Rules of Civil Procedure provides:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a . . . foreign corporation . . . must be served . . . in a judicial district of the United States . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by

---

[6]    Although the Court notes that there were procedural defects with the Notice of Removal, Perez waived any such defects by failing to timely raise them in the Motion to Remand. *See* 28 U.S.C. § 1447(c) (providing that a party must raise any defect other than lack of subject matter jurisdiction within 30 days of removal); *Ramos v. Quien*, 631 F. Supp. 2d 601, 608 (E.D. Pa. 2008) (explaining that a defendant's violation of the unanimity rule is a procedural, not jurisdictional, defect in the removal process and is waived if not presented within the thirty day limit imposed by 28 U.S.C. § 1447(c)).

> law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant."

*See* Fed. R. Civ. P. 4(h)(1)(B). Under Rule 4, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" also constitutes proper service of a foreign corporation. *See* Fed. R. Civ. P. 4(e)(1) and 4(h)(1)(A).

Pennsylvania Rule of Civil Procedure 424 provides that service upon a corporation "shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action: . . . the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation . . . ." Pa. R. Civ. P. 424(2). "Good faith reliance on the apparent authority of an individual to accept service on behalf of a business can satisfy the requirement." *Meoli v. Message Ctr. USA*, 1998 WL 717418, at *1 (citing *Ayres*, 1995 WL 704781, at *3). In "adopting Rule 424, the Pennsylvania Supreme Court did not intend to burden Pennsylvania plaintiffs with the inconvenience and increased costs of requiring hand delivery of process to corporations found outside the Commonwealth." *City of Allentown v. O'Brien & Gere Engineers, Inc.*, No. CIV. A. 94-2384, 1995 WL 380019, at *7 (E.D. Pa. June 26, 1995) (explaining: "that in adopting Rule 424, the Pennsylvania Supreme Court did not intend to burden Pennsylvania plaintiffs with the inconvenience and increased costs of requiring hand delivery of process to corporations found outside the Commonwealth" (citing *Trzcinski v. Prudential*, 597 A.2d 687 (Pa. Super. 1991))).

In the instant action, the Berks County Sheriff's Office served Penske Canada at its business location in Reading, Pennsylvania on November 9, 2020. *See* Proof of Service 3. The Sheriff served an individual who accepted service as the "adult person in charge" for Penske Canada. *Id.* This satisfied the federal and state service rules. Further, Perez had a good faith

reliance that the individual served at Penske Canada's business, who represented himself as an "adult in charge" capable of receiving service of process for Penske Canada, had the authority to accept service. *See* Proof of Service 3. Therefore, Penske Canada's motion to dismiss based on improper service is denied.[7]

### C. Penske Canada's 12(b)(6) Motion to Dismiss is denied.

Penske Canada has moved to dismiss Perez's claims alleging they are preempted by the FAAAA and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Under the first step of the Third Circuit's four-part inquiry outlined in *Bedoya*, this Court must determine whether the state law at issue applies to all businesses or whether it focuses on motor carriers. If the law at issue applies to all businesses, then Perez's claims are not preempted by the FAAAA. Applying the reasoning in *Bedoya*, the United States District Court for the Middle District of Pennsylvania in *Ciotola v. Star Transp. & Trucking LLC*, held that a plaintiff's claims were not preempted by the FAAAA. *See* 481 F. Supp. 3d 375 (M.D. Pa. 2020). In *Ciotola*, the court explained:

> The Third Circuit's reasoning in *Bedoya* that although a state law may have negative financial consequences for a broker or carrier does not mean that the state law should be preempted by the FAAAA is particularly relevant. *See Bedoya*, 914 F.3d at 822. The above analysis indicates that although Pennsylvania's tort law may have some negative financial consequences for a broker or carrier, it is not preempted by the FAAAA. Pennsylvania's tort law is a part of the backdrop of laws that all businesses must follow. *Adames v. May Furniture, Inc.*, 2019 U.S. Dist. LEXIS 206068, 2019 WL 8937042, *8-9 (M.D. Pa. 2019).

---

[7] Moreover, courts have explained that "[w]hen a party has knowledge of a suit despite improper service and does not appear to be prejudiced because of improper service, the Third Circuit has approved relaxation of the Rule 4 requirements." *Gustavson v. Vito*, No. CIV. A. 89-1944, 1989 WL 89217, at *4 (E.D. Pa. Aug. 2, 1989) (citing *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513 (3d Cir. 1988)). The same day Perez effectuated service on Penske Canada at the Reading property, counsel for Penske Canada entered his appearance on behalf of Penske Pennsylvania and removed the suit to this Court. *See* Notice of Removal. These actions indicate Penske Canada's knowledge of Perez's suit against it. Accordingly, Penske Canada was on notice of the claims filed against it and was not prejudiced by Perez's method of service.

*Ciotola*, 481 F. Supp. 3d at 390.

Similarly here, Perez's claims are grounded in Pennsylvania tort law. These state laws make up the "backdrop of laws that all business must follow." *Id.* Specifically, Perez's negligence and vicarious liability claims do not arise out of state law solely "focuse[d] on motor carriers." *Bedoya*, 914 F.3d at 821. As a result, Perez's claims are not preempted under *Bedoya*. Penske Canada's motion to dismiss pursuant to Rule 12(b)(6) is denied.

## V. CONCLUSION

For the reasons outlined above, Perez's Motion to Remand is denied because Penske Pennsylvania, which was not involved in the events of this case, was fraudulently joined. Penske Pennsylvania is dismissed, this Court has diversity jurisdiction, and the Motion to Remand is denied. Additionally, Penske Canada's Motion to Dismiss pursuant to Rule 12(b)(5) is denied because Penske Canada was properly served under both the Federal and Pennsylvania Rules of Civil Procedure. Penske Canada's Motion to Dismiss pursuant to Rule 12(b)(6) is also denied because Perez's claims are grounded in Pennsylvania tort law, which all businesses are required to follow, and are therefore not preempted by the FAAAA.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge